**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| SAUL MORALES CHAVEZ, | ) | CASE NO. 4:25-cv-02061-SL |
| | ) | |
| Petitioner | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| DIRECTOR OF DETROIT FIELD OFFICE, | ) | |
| ET AL., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondents. | ) | |

**I.      Introduction and Procedural History**

On September 29, 2025, Petitioner Saul Morales Chavez ("Chavez") filed an application for a writ of habeas corpus under 28 U.S.C. § 2241, with an additional request for a show cause order under 28 U.S.C. § 2243. (ECF Docs. 1, 1-1). On October 2, 2025, the matter was referred to me for a report and recommended decision, including a referral directing Respondents to answer, and any appropriate order directed to the matter. (ECF Doc. 3).

Pursuant to 28 U.S.C. § 2243, I ordered Respondents to provide their written response to the Petition, which they did on October 8, 2025. (ECF Doc. 6). I then held a hearing with all parties on October 16, 2025.[1] The matter is fully ripe.

---

[1] At the time of these proceedings, the government of the United States is under shutdown orders, with many federal employees placed on furlough or working without pay, including counsel representing Respondents and the persons holding Petitioner in custody. Given these constraints, the hearing was held by Zoom with the consent of the parties to ensure Petitioner received a timely hearing, rather than delaying the matter until such time an in-person hearing would be feasible. (Non-document entry of Oct. 10, 2025).

1

## II.     Factual Background and Proceedings in Immigration Court[2]

Chavez is a citizen of Mexico, and has been living in the United States continuously since 2001. (ECF Doc. 1, Pet., ¶¶ 21, 24). He did not seek admittance on arrival in the United States. (ECF Doc. 6-1, Decl. of Luke Affholter ("Affholter Decl."), ¶¶ 5-6). He has a fixed address in North Little Rock, Arkansas where he has lived for the last 16 years with his wife and two U.S. citizen daughters. (ECF Doc. 1, ¶ 21). As presented in his Petition and before immigration officials, Chavez owns a home, pays taxes, and his daughters attend their local school. (*Id.*; *see also* ECF Doc. 1-7).

Chavez alleges that harm could come to himself or his family were he to return to Mexico. (*Id.* ¶¶ 22, 23). He states that he fears persecution by the cartel if he returns to Mexico because his brother-in-law went missing and his former neighbor was murdered by the cartel. (*Id.* ¶ 22). He alleges his daughters could be targeted for crimes against women due to their age and mental health status, should they attempt to go with him or visit him in Mexico. (*Id.* ¶ 23).

His current detention arose on his return from a vacation to Puerto Rico. (*Id.* ¶ 25). He was apprehended by Customs and Border Protection officers on February 11, 2025 while attempting to board a flight to Washington, D.C. (*Id.*; *see also* Affholter Decl., ¶ 4). He presented his Mexican passport to the officers, but had no other valid entry documents. (*Id.*). He does not

---

[2] At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor. *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" without converting to summary judgment. *Id.*, quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

2

assert that he sought admission at any time prior to the events leading to this Petition.[3] (*Id.* ¶ 24; *see also* Affholter Decl., ¶ 6).

On this basis, the Department of Homeland Security commenced removal proceedings against Chavez under 8 U.S.C. § 1229a. (Affholter Decl. ¶ 7; *see also* ECF Doc. 6-1, pp. 18-21). On February 11, 2025, the Department of Homeland Security served Chavez a notice to appear, alleging he is "an alien present in the United States who has not been admitted or paroled." (ECF Doc. 6-1, p. 18). It also charged Chavez as a removable alien pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, on the basis of his being an immigrant not in possession of valid documentation, and alleging that he "entered the United States illegally and without being inspected and remained in the United States, living and working without the authorization of the Citizenship and Immigration Services." (*Id.* at p. 21). He has been detained since February 12, 2025, and is currently held at the Northeast Ohio Correctional Center ("NEOCC"). (ECF Doc. 1, Pet., ¶ 1).

On April 7, 2025, Chavez moved for a bond hearing before the Pompano Beach, Florida immigration court; Respondents allege this court did not have jurisdiction over his bond determination or removal proceedings. (ECF Doc. 1-7; Affholter Decl., ¶ 8). On April 14, 2025, Chavez requested a bond redetermination hearing, which was held in Cleveland April 28, 2025 before an immigration judge, who determined Chavez was ineligible for release pending his removal hearings because he departed the United States without permission and was therefore found to be a flight risk. (ECF Doc. 1-3). Chavez moved to reconsider the bond determination,

---

[3] Chavez has since applied for Asylum and Withholding of Removal, and Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. (ECF Doc. 1, Pet., ¶ 24). At the time of his Petition, Chavez's individual merits hearing was set for September 30, 2025; it has since been continued until October 30, 2025. (*Id.*; *see also* Affholter Decl., ¶¶ 13, 15).

which was summarily denied on May 9, 2025. (ECF Doc. 1-4). He again appealed the detention

decision, this time asserting that, because Puerto Rico is part of the United States, he had never

departed the United States and, accordingly, did not need to seek permission. (*See* ECF Doc. 1-2,

p. 2). After considering the evidence submitted by the parties, the immigration court denied

Chavez's appeal on May 19, 2025. (*Id.* at pp. 1-3). In its decision, the immigration court stated

that Chavez was "not subject to mandatory detention" and that the court would "consider

whether [Chavez] is deserving of bond under INA section 236(a) [8 U.S.C. 1226(a)].[4]" (ECF

Doc. 1-2, p. 2). In a more thorough determination correcting the implication that Puerto Rico was

not a territory of the United States, the court denied his motion for bond redetermination,

reasoning that Chavez was a flight risk because he did not contact ICE prior to his departure,

which resulted in his being apprehended and detained upon reentry to the United States, and he

was unable to provide appropriate documentation when asked by ICE officers. (ECF Doc. 1-2, p.

3).

     While Chavez continued pursuing his bond determination appeals, the Board of

Immigration Appeals ("BIA") issued an interim decision in the *Matter of Yajure Hurtado*,

determining that aliens seeking admission are subject to mandatory detention under 8 U.S.C.

§ 1225(b)(2)(A) and that immigration judges lack jurisdiction to make bond determinations

under this statute. (ECF Doc. 1, Pet., ¶¶ 3, 8; *see also* ECF Doc. 1-7 *and Matter of Yajure*

*Hurtado*, 29 I&N Dec. 216 (BIA 2025)). On September 18, 2025, the BIA dismissed Chavez's

appeal of his detention decision for lack of jurisdiction, citing *Matter of Yajure Hurtado*. (ECF

Doc. 1, Pet., ¶¶ 3-5, 8; *see also* ECF Doc. 6-1, pp. 22-25).

---

[4] For clarity, citations within this Report and Recommendation will be to the United States Code Sections.

Chavez now petitions this Court for habeas corpus relief, asserting that the dismissal of his discretionary bond under *Matter of Yajure Hurtado* is a violation of his Due Process rights. (ECF Doc. 1, Pet., ¶¶ 43-49). He asserts that, because he has been in the United States for over two years, he is subject to discretionary detention under 8 U.S.C. § 1226(a), and that it is a violation to extend 8 U.S.C. § 1225(b)'s mandatory detention to him. (*Id.* ¶¶ 50-52).

## III.    Legal Standard

### A.    Section 2241 Proceedings

Federal district courts are limited in their relief under § 2241 when considering immigration cases. *See, e.g.*, *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) (finding a district court lacks jurisdiction to consider removal orders); *see also* 8 U.S.C. § 1252(g) (giving the Attorney General of the United States exclusive jurisdiction over removal proceedings). This Court may not grant habeas relief as to the underlying immigration question, *i.e.*, a removal question. *Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g)" for challenges regarding the legality of removal orders). However, the district court may review whether an alien is lawfully detained; the Attorney General's immigration authority[5] does not abrogate § 2241's authority to grant the writ within these bounds. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the appropriate remedy to determine the legality of a person's custody).

---

[5] Although authority is statutorily vested in the Attorney General, immigration enforcement, and administration functions were transferred to the Secretary of Homeland Security by the Homeland Security Act of 2002. Pub. L. No. 107-296, 116 Stat. 2135 (2002). However, the Attorney General's discretionary detention authority under § 1226(a) delegated to immigration judges, "is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

To that end, this Court may still interpret immigration statutes applied against a petitioner to discern whether the detention is lawful or not. *See id.*; *see also* 8 U.S.C. § 1252(e)(5) (stating that the court's inquiry is limited to determine whether an order under § 1225(b)(1) was issued and whether it relates to a petitioner). When the Attorney General makes any determination against a petitioner, § 1252(e)(2) allows habeas review of three matters: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed"; and (3) whether the petitioner can prove that they have been granted entry as a lawful permanent resident, refugee, or asylee. 8 U.S.C. §§ 1252(e)(2)(A)–(C). In no instance may this Court determine whether an alien is in fact inadmissible or otherwise entitled to relief from removal. *Id.* § 1252(e)(5).

### B.     Interpretation of Immigration and Nationality Act Sections 1225(b) and 1226(a)

To begin with general provisions of immigration law, an "alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission." *Thuraissigiam*, 591 U.S. at 108. Aliens who are detained trying to enter elsewhere are treated similarly. *Id.*, citing 8 U.S.C. §§ 1225(a)(1), (3). However, "several classes of aliens are 'inadmissible' and therefore 'removable.'" *Id.* at 107-08 (2020), quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A). Among these are aliens who lack valid documentation "at the time of application for admission." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

The removal process provides for an evidentiary hearing before an immigration judge, where the alien may challenge their removal, including applying for asylum. *Thuraissigiam*, 591 U.S. at 108 (internal citations omitted). Should their claim be rejected, the alien may appeal the removal order to the BIA, and may also be entitled to review in a federal court of appeals. *Id.* While their removal proceedings are being litigated, the alien will generally be detained. *Id.*

However, the classification of the alien determines whether that detention is mandatory or discretionary. *Compare* 8 U.S.C. §§ 1225(b)(2)(A) *with* 1226(a).

Thus, relevant to the present inquiry are 8 U.S.C. §§ 1225(b) and 1226(a), both of which govern detention of noncitizens pending removal proceedings. Section 1225 governs the expedited removal process and requires mandatory detention under its provisions, while § 1226 permits discretionary release from detention for certain aliens.

### 1.    8 U.S.C. Section 1225(b)

Section 1225 controls the Government's determination of the admissibility of aliens seeking to enter the country, which "generally begins at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). This section provides for inspection by immigration officers, and expedited removal of, certain arriving aliens, *i.e.,* "applicants for admission" who are "present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. §§ 1225(a)(1), (3). During inspection, an immigration officer may determine an alien to be inadmissible and order they be removed without further hearing or review. *Id.* § 1225(b)(1)(A)(i). An applicant for admission is subject to expedited removal if they (1) are inadmissible for lack of a valid entry document; (2) have not been physically present in the United States continuously for two years before the determination of inadmissibility;[6] and (3) are among those designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109, citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)-(II). An applicant can avoid expedited removal by claiming asylum*Id.*. at 108-09; *see also* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B).

---

[6] Specifically, this section describes the aliens subject to its provisions as "an alien . . . who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Importantly, in addition to expedited removal proceedings, § 1225 carries with it mandatory detention clauses. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 U.S.C. § 1225(b)(2)(A). This clause states that any applicant for admission who claims asylum "shall be detained" for proceedings under Section 1229a, or until determination of a credible fear of persecution or "until removed," as applicable. *Id.*

### ii.      8 U.S.C. Section 1226(a)

Section 1226 generally governs the process of arresting and detaining aliens once inside the United States. *Jennings*, 583 U.S. at 288. Under § 1226(a)'s "default rule," the Attorney General may issue a warrant for an alien's arrest, and provide for the alien's detention pending a removal decision. *Id.*, citing 8 U.S.C. § 1226(a). Section 1226(a) outlines a framework for detention: The Attorney General "may continue to detain the arrested alien;" "may release the alien on bond of at least $1,500" or "may release the alien on conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Release, however, does not permit work authorization. *Id.* § 1226(a)(3).

The arresting immigration officer makes the initial detention determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Aliens may appeal that determination in a bond hearing before an immigration judge. *Id.* And, under § 1226(a)'s discretionary framework, the Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. § 1226(b).

Congress amended 8 U.S.C. § 1226 to add mandatory detention for certain criminal aliens, as codified in § 1226(c) through the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). This section "carves out a statutory category of aliens who may not be released under § 1226(a)." *Jennings*, 583 U.S. at 289. The Attorney General must detain an alien who is (1) inadmissible because they are in the United States without being admitted or paroled, obtained

8

documents or admission through misrepresentation or fraud, or lacks valid documentation; and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

In short, as the Court stated in *Jennings*, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under § 1226(a)[.]" 583 U.S. at 289 (emphasis added).

## IV.    Discussion

With these foundational principles described, I turn to Chavez's federal habeas petition.

To summarize, the Government initiated bond determination proceedings against Chavez through the default provisions of § 1226(a) and provided him his discretionary detention and appeal proceedings. (ECF Doc. 1, Pet., ¶ 29; *see also* ECF Doc. 1-2, Bond Redetermination, p. 2 (setting forth 8 U.S.C. § 1226(a)'s discretionary detention standard when considering Chavez's motion for bond redetermination)). Midstream in his appeals process, the Government determined to enforce § 1225(b)(1)'s mandatory detention provisions against him on the basis of intervening Agency decisions and dismissed the appeal on jurisdictional grounds. (ECF Doc. 1, Pet., ¶¶ 8, 42; ECF Doc. 6-1, p. 10 (applying *Matter of Yajure Hurtado*'s interpretation of mandatory detention under 8 U.S.C. § 1225(b)(2)(A) to dismiss Chavez's appeal)). Even though it initiated Chavez's bond proceedings under § 1226(a), the Government now asserts that, even though he has lived in the United States for over twenty years, Chavez is an "applicant for admission" under § 1225(b)(1). (ECF Doc. 6, pp. 6-13). Chavez asserts, and the Government

opposes, that § 1226(a) properly applies to him, application of § 1225(b)(1) violates his due process rights, and he is now without recourse to appeal his detention except through federal habeas proceedings. (ECF Doc. 1, Pet., ¶¶ 43-49; ECF Doc. 6, pp. 13-14).

In addition to these arguments presented in his brief, at the hearing Chavez raised issues of statutory interpretation – that, had Congress intended for § 1225(b) to apply to all applicants for admission regardless of the time they had remained in the United States, would render the Laken Riley Act superfluous.

When questioned as to whether Chavez had been arrested pursuant to the warrant process contemplated in § 1226(a), neither party could affirmatively answer. However, Chavez asserted that even if no warrant were issued, his detention without a warrant would still raise due process violations and is appropriately considered in habeas review.

As the Government argued, application of § 1225(b) to all applicants for admission is proper; first, that it is proper for an Agency to correct its own mistakes when no warrant has been issued under § 1226(a), and second, that the Laken Riley Act is not rendered superfluous when it still covers those persons who previously sought admission but no longer have legal status to remain in the United States, such as those who overstay their visas. In support of its hearing argument, the Government cited to *Kaplan v. Tod*, 267 U.S. 228 (1925); *Shaughnessy v. United States*, 345 U.S. 206 (1953); *Chavez v. Noem*, —F. Supp. 3d—, 2025 WL 2730228, (S.D. Cal. Sept. 24, 2025); and a not-yet-reported order in *Lopez v. Trump*, 8:25cv00526, Docket No. 35 (D. Neb., Sept. 30, 2025).

### A.    Application of Section 1225(b)(1) or Section 1226(a) to Chavez

As § 2241 permits, I turn to whether § 1225(b)(1) or § 1226(a) applies to Chavez, and whether the Government may now apply *Matter of Yajure Hurtado* in his case to divest the immigration courts of jurisdiction to consider discretionary detention.

Although the BIA's decision in *Matter of Yajure Hurtado* is recent, a number of district courts within the Sixth Circuit have considered the applicability of §§ 1225(b)(1) versus 1226(a) to aliens who have been continuously present in the United States for longer than two years but had not previously sought admission. *See, e.g.*, *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, (E.D. Mich. Sept. 9, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, (W.D. Ky. Sept. 19, 2025); *and Singh v. Lewis*, No. 4:25-CV-96-RGJ, 2025 WL 2699219, (W.D. Ky. Sept. 22, 2025). These district courts have provided thorough discussion of the principles of statutory interpretation, the statutory scheme of each section, Congressional intent, and the ways in which the Government's proposed interpretation may render certain provisions, including the Laken Riley Act, superfluous. *See Pizarro Reyes*, 2025 WL 260945, at *4-*7, *Barrera*, 2025 WL 2690565, at *3-*6. I agree with our sister courts' interpretation of the statutory text and decline to reinvent the wheel by adding my own discussion of the matter, particularly when a petitioner has remained in detention without appeal and his removal hearing is imminent. Rather, with a nod to my fellow courts and in the interest of judicial economy, I follow *Singh* in incorporating their reasoning by reference. *Singh*, 25 WL 2699219, at *3.

I now turn to which statute is appropriately applied to Chavez. Chavez alleges that he has been continuously in the United States since he first entered in 2001. In support of this contention, he provided documentation to the immigration court, and attached to his Petition, demonstrating that he has a fixed residence here, has two U.S. citizen children, and has various

11

other longstanding ties to his community in North Little Rock. (*See* ECF Docs. 1-7, 1-8). At the

hearing, the Government raised an issue that Chavez may have returned to Mexico to renew his

Mexican passport presented to immigration officials when apprehended in Puerto Rico, creating

a potential break in his continuing presence in the United States. However, I also note the

allegations the Government asserted against Chavez when it served him the Notice to Appear on

February 11, 2025. That document states:

> THE SERVICE ALLEGES THAT YOU:
>
> 1. You are not a citizen or national of the United States;
>
> 2. You are a native of Mexico and a citizen of Mexico;
>
> 3. You attempted to enter the United States at or near Nogales, Arizona POE, on or about 1998 and were encounter[ed] by Border Patrol and processed for a Voluntary Return to Mexico;
>
> 4. You then illegally entered the United States by foot on or about 2001 at or near Nogales, Arizona POE;
>
> 5. You were not then admitted or paroled after inspection by an Immigration Officer;
>
> 6. At that time, you arrived at a time or place other than as designated by the Attorney General;
>
> 7. On February 11, 2025, You were encountered at the Luis Munoz Marin International Airport while attempting to board United Flight UA2022 destined to Washington;
>
> 8. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; to wit you entered the United States illegally and without being inspected and remained in the United States, living and working without the authorization of the Citizenship and Immigration Services.

(ECF Doc. 6-1, p. 7).

With this, Chavez has shown that he has been continuously in the United States for more

than two years, and, at least at one time, the Government agreed. Despite the Government's later

12

contentions at the hearing, it has not shown that Chavez ever left the United States or its territories, nor that he ever returned to Mexico to renew his passport or otherwise.

Even though Chavez has not previously been admitted, and could, reading § 1225(a)(1) alone, be considered as an "applicant for admission" under the statute, the Court's reading of § 1225 does not end there. As § 1225(b)(1)(A)(iii)(II) states, an "applicant for admission" is one "who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[.]" In the Notice to Appear, signed by an immigration officer, it states that Chavez "illegally entered the United States by foot in 2001" and that he "remained in the United States, living and working without the authorization of the Citizenship and Immigration Services." (ECF Doc. 1, p. 7). Therefore, based on a plain reading of 8 U.S.C. § 1225 and the Notice to Appear issued against him, Chavez falls within the two-year exclusionary provisions of § 1225(b)(1)(A)(iii)(II) and thus this statute does not describe him. It may not now be applied against him.

The Government may be correct in its contention that *Matter of Yajure Hurtado* is a corrective Agency action to close a legal loophole for aliens who have resided in the United States but who have not previously sought admission. I do not disagree that there may be a "'legal conundrum' for an individual to be in the United States, without being admitted, yet still not 'seeking admission.'" *Barrera*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5, citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221. Even so, however, this Court must use its independent judgment and is not bound by an Agency interpretation of law simply because it may be ambiguous. *Loper Bright Enter. v. Raimando*, 603 U.S. 369, 412-13 (2024). And, reading §§ 1225 and 1226 together, it appears the appropriate carveout for persons like Chavez who have

13

not previously sought admission despite being in the United States for longer than two years, is for his case to fall within § 1226(a)'s "default" position. *Jennings*, 583 U.S. at 303. As the *Jennings* Court stated, "[w]hile the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, § 1226 applies to aliens already present in the United States." *Id.*

I therefore determine that retroactive application of § 1225(b) against Chavez, who has been in the United States continuously for longer than two years and who is not yet subject to a final order of removal is improper. The Government, in the Notice to Appear, at the initial bond hearing, and in redetermination proceedings, previously agreed, both on the fact of his remaining in the United States for longer than two years, and on the inapplicability of that statute to his detention proceedings. The Government also agreed that § 1226(a)'s discretionary detention standard applied to his case and provided him with appropriate process at that time. Therefore, based on both statutory interpretation, the Government's initial proceedings, and Supreme Court precedent, § 1226(a) properly applies to Chavez and discretionary bond proceedings should continue under that statute.

None of the cases cited by the Government counsel otherwise. *Kaplan v. Tod* is a 100-year-old case and has significant intervening precedent. *Shaughnessy v. United States* has been superseded by statute as described in *Thurassigian, supra.* And the two cases from this year are easily distinguishable. First, *Chavez v. Noem* is a case out of the Southern District of California and does not carry the same persuasive weight as the cases available within this District's sister courts; neither does it contend that the plaintiffs in that case fell within § 1225(b)(1)(A)(iii)(II)'s exclusion scheme, as Chavez does here. *See Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *1 (S.D. Cal. Sept. 24, 2025). Next, *Lopez v. Trump* is also distinguishable. In that case, the court determined the petitioner had not met his burden to show he was entitled to

habeas relief due to mistakes in the petition, including "errors about how long Vargas Lopez has been in the United States; where he was living; where, when, and how he was detained by immigration officials; and where he is now detained." *Lopez v. Trump*, 8:25-cv-00526, Docket No. 35, p. 2 (D. Neb. Sept. 30, 2025). Furthermore, and fatally for the Government's application to Chavez here, that court also found that DHS had argued for detention pursuant to 8 U.S.C. § 1225(b) at the hearing before the immigration judge. *Id.* These cases therefore carry no persuasive value and I will not recommend overriding the growing caselaw finding against the Government's interpretation of *Yajure Hurtado* when applied to persons who have been in the United States for over two years. Indeed, *Barrera* states that, at least as of September 19, "*every court who has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's.*" *Barrera*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025) (emphasis in original).

As *Barrera* listed, district courts in the Sixth Circuit and across the country agree in the application of § 1226(a) in cases like Chavez's here, including *Pizarro Reyes*, 2025 WL 2609425, at *7-9 (holding that the text, legislative history, and agency guidance support the argument that § 1226, not § 1225 applies); *Lopez-Campos, v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 ("the Court finds that Lopez-Campos is not subject to the provisions of Section 1225(b)(2)(A). Rather, he clearly falls under the provision of Section 1226(a), and is subject to the discretionary bond determination outline therein."); *Rodriguez v. Bostock*, 779 F. Supp. 3d, 1239, 1261 (W.D. Wash., Apr. 24, 2025) ("[Petitioner] has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s 'default' rule for discretionary detention."); *Rosado v. Figueroa*, 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025); *Kostak v. Trump*, 2025

WL 2472136, at *3 (W.D. La. Aug. 27, 2025). Since *Barrera*, still more courts have determined that § 1226(a) applies to aliens who have resided in the United States, and that § 1225(b)'s mandatory detention is inapplicable. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 1:25-CV-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025) ("In sum, the Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States for over 20 years and who were already within the United States when apprehended and arrested."); *Singh*, 2025 WL 2699219, at *4 ("[Petitioner], who has been present in the United States for more than 12 years is not 'seeking admission' into the United States. Thus, Section 1226, not Section 1225, should apply to his detention."). Other district courts have not permitted retroactive application of §1225(b)(1) where immigration officials have begun proceedings under standard removal proceedings and its discretionary detention provision. *See, e.g.*, *Ballestros v. Noem*, No. 3:25-CV-594-RGJ, 2025 WL 2880831, at *3-4 (W.D. Ky. Oct. 9, 2025) ("[Petitioner] cannot be subject to Section 1225 proceedings. . . . Therefore, [Petitioner] is subject to standard removal and detention proceedings under Section 1229a and Section 1226.") *and Patel v. Noem*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *4-5 (W.D. Ky. Oct. 3, 2025) (finding same).

This precedent outweighs any argument the Government may make about its intent to correct the statute's application through Agency guidance. Rather, the law counsels that it is best left to the courts to properly interpret statutes. As these decisions agree, § 1225(b) does not apply to persons who have shown to the satisfaction of an immigration officer that they have remained in the United States for greater than two years. Chavez did so, as the Notice to Appear confirms. The Government may not now make a redetermination and reinterpret the statute against Chavez, particularly where it has done so without affording him due process, as I discuss next.

16

I therefore determine § 1226(a) is properly applicable to Chavez.

**B.      Due Process**

Having determined that § 1226(a) applies to Chavez, I turn to whether the dismissal of his bond appeal violated due process.

The Due Process Clause extends to all persons regardless of status, including non-citizens. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). "[O]nce an alien enters the country . . . the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Therefore, Chavez, despite his lack of legal status in the United States, is still afforded due process protections.

**1.      Substantive Due Process**

As a general matter, substantive due process protects individuals from arbitrary government action that infringes on their fundamental rights, including the right to liberty. *Rosales-Garcia v. Holland*, 322 F.3d 386, 408 (6th Cir. 2003). In the immigration context, "an alien's status as removable is alone insufficient to outweigh his constitutionally protected liberty interest." *Id.*

It is permissible for immigrants to be detained pending their removal proceedings, even under a mandatory detention structure. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) (upholding the constitutionality of mandatory detention under § 1226(c) for certain criminal aliens during removal proceedings, where such detention is brief and serves the legitimate government purposes of ensuring the alien's presence at removal hearings and protecting the public from potential harm).

Here, Chavez is detained pending his removal proceedings, and had received a bond hearing and available appeals processes. If those appeals had continued, Chavez's due process rights would not have been infringed. Therefore, the BIA's decision in *Matter of Yajure Hurtado* does not violate an alien's substantive due process, when the correct statutory provision is applied at the outset. Yet, Chavez is now being detained without possibility of appeal, where the Government determined he initially had the ability to do so. As a general matter, his continued detention during the pendency of removal proceedings does not violate his substantive due process rights. *Demore*, 538 U.S. at 528-29. (distinguishing that detention pending removal proceedings does not violate due process because the conclusion of removal proceedings provides a definite end date for detention). However, the Board of Immigration Appeals' dismissal of his bond appeal by deciding that § 1226(a) no longer applied to him, and newly applying § 1225(b)(2)(A)'s mandatory detention against him does create a due process violation, as I now discuss.

### 2.     Procedural Due Process

Procedural due process requires the government provide adequate safeguards to ensure against arbitrary deprivation of an individual's liberty interest, including the ability to challenge the basis for detention. *See Lopez-Campos*, 2025 WL 2496379, at *10.

To determine the adequacy of process in the context of civil immigration detention, the Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976);

18

*see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Matthews* test).

### a.   Private interest

It is undisputed that Chavez has a significant private interest in not being detained. Indeed, freedom from detention is one of the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. And, to be detained without the possibility of appeal leaves Chavez without recourse to relief or an affirmative end date for his release while his removal proceedings are being decided. *See Singh*, 2025 WL 2699219, at *4 (finding the first *Matthews* factor favored petitioner where continued detention infringed on his liberty interest). This factor favors Chavez.

### b.   Risk of Error

The second *Matthews* factor also favors Chavez, because, as above, he was originally held under § 1226(a)'s discretionary provisions and is now being held in mandatory detention through an agency extension of § 1225(b)(2)(A)'s mandatory detention provisions against him. And, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Loper Bright Ent.*, 603 U.S. at 413. In Chavez's case, immigration officials, vested with authority delegated by Congress to the Attorney General and DHS, first determined that standard removal proceedings and discretionary detention under Section 1226(a) applied to his case. (ECF Doc. 1-2, pp. 1-2; ECF Doc. 6-1, Affholter Decl. ¶ 7; ECF Doc. 6-1, pp. 4-7). The unilateral decision by the BIA to use *Matter of Yajure Hurtado* to extend a different statute to Chavez's circumstances

despite earlier determining otherwise now leaves his liberty interest at risk. The Government Respondents may not now extend the bounds of their authority to apply Section 1225(b)(2)(A) against him, and this Court must ensure proper application of the laws against Chavez.

This misapplication may also influence his removal proceedings, because "noncitizens cannot be in two parallel paths of removal proceedings." *Sanchez Ballestros v. Noem*, No. 3:25-CV-594-RGJ, 2025 WL 2880831, at *3 (W.D. Ky. Oct. 9, 2025). If an alien is first placed in full removal proceedings, they cannot later be subjected to expedited removal under § 1225(b)(1). *Id.* (collecting cases). To do so at this stage, without conducting a hearing or providing Chavez other explanation as to his newly applied mandatory detention, places great risk on the erroneous deprivation of Chavez's liberty interest.

c.      **The United States' Interest**

The final *Matthews* factor concerns the United States' interest in the proceedings, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. In making this consideration, I recognize that the United States has an interest in meaningful immigration laws that advance its stated policies, and that § 1226(a) may be flawed as the default provision for immigrants in the United States without status. I cannot, however, countenance the Government Respondents' position that Chavez's "only plausible challenge to his detention is that he is detained under the wrong statute, which, even if true, would make his detention unlawful, but it would not make it unconstitutional." (ECF Doc. 6, p. 13). The United States has an interest in consistent application of its laws and ensuring that those laws are applied under the proper means. Yet it is not appropriate to utilize the "wrong" statute against any person to ensure their continued detention. Respondents, speaking for one branch of government, may

20

not choose unilaterally when and how to apply duly enacted laws. *See Lopez-Campos*, 2025 WL 2496379, at *10.

Moreover, the United States has not shown that it would be burdensome to continue applying § 1226(a)'s discretionary detention scheme against Chavez. An immigration judge has wide discretion to determine which aliens are granted release. And, even if erroneously premised on his travel "outside" the United States to Puerto Rico or a need to notify ICE, the immigration judge made the determination that Chavez was a flight risk and not entitled to bond. Providing Chavez with an avenue for appeal does not automatically ensure his release; rather, it affords him only the fundamental constitutional right to due process given to all persons within the United States, whether their presence here is lawful, unlawful, temporary, or permanent. *Zadvydas*, 533 U.S. at 693. Therefore, the final factor also weighs in Chavez's favor.

For all of these reasons, I find that Respondents have misapplied § 1225(b)(2)(A)'s mandatory detention requirement against Chavez and his continued detention without the possibility of appeal violates his due process rights. Accordingly, I recommend the District Court grant Chavez his Petition and require Respondents conduct a hearing no more than five business days thereafter to determine whether Petitioner is entitled to discretionary bond under § 1226(a) and consistent with this Court's determination.

**V.       Conclusion and Recommendation**

Because § 1225(b) is inapplicable to Petitioner, Respondents may not now impose mandatory detention against him pending his removal decision and the dismissal of his appeal pursuant to § 1225(b)(2)(A) and *Matter of Yajure Hurtado* was in error. I therefore recommend the District Court grant Chavez's Petition and require Respondents hold a hearing no more than

21

five business days thereafter to determine whether Petitioner is entitled to discretionary bond

pursuant to § 1226(a) and consistent with this Court's determination.

Dated: October 20, 2025

Reuben J. Sheperd
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).