UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAUL MORALES CHAVEZ ) | CASE NO. 4:25-cv-2061 |
| ) | |
| Petitioner, ) | CHIEF JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| DIRECTOR OF DETROIT FIELD ) | |
| OFFICE, *et al.*, ) | |
| ) | |
| Respondents. ) | |

On October 20, 2025, Magistrate Judge Reuben J. Sheperd issued a Report and Recommendation ("R&R") recommending that this Court grant the petition for writ of habeas corpus filed by petitioner Saul Morales Chavez ("Chavez") pursuant to 28 U.S.C. § 2241. (Doc. No. 10 (R&R).) Respondents Kevin Raycraft,[1] Director of the Detroit Field Office of U.S. Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, Attorney General of the United States (collectively, the "government") filed timely objections. (Doc. No. 12 (Objections).)

The government makes various objections to the R&R, but they all boil down to the claim that, while the R&R addresses the applicability of 8 U.S.C. § 1225(b)(1), it does not adequately address the applicability of 8 U.S.C. § 1225(b)(2). (*See generally* Doc. No. 12.) This Court finds

---

[1] Rebecca Adducci was originally listed as a respondent and Director of the Detroit Field Office of Immigration and Customs Enforcement. (Doc. No. 1 (Petition).) Kevin Raycraft is Acting Director of the Detroit Field Office and is automatically substituted for Rebecca Adducci under Fed. R. Civ. P. 25(d).

that, while the R&R may have limited its analysis to § 1225(b)(1), an analysis under § 1225(b)(2) does not change the ultimate resolution of Chavez's petition. Accordingly, the government's objections are OVERRULED, and the R&R is ADOPTED, including as to its ultimate resolution of the petition, and MODIFIED in part to include the § 1225(b)(2) analysis contained below. (*See infra* § III(B)(2).)

**I. BACKGROUND**

The R&R sets forth a thorough factual and procedural history of this matter. (Doc. No. 10, at 1–5.[2]) For the sake of brevity, the Court only briefly summarizes the facts relevant to its analysis.

Chavez is a citizen of Mexico currently residing in the United States. (Doc. 1 ¶ 21.) He did not seek admittance upon arrival to the United States. (Doc. No. 6-1 (Affholter Decl.) ¶¶ 5–6.) Chavez has resided in the United States continuously since 2001. (Doc. No. 1 ¶¶ 21, 24.) Chavez was apprehended by Customs and Border Protection officers on his way back from a vacation in the United States territory of Puerto Rico. (*Id.* ¶ 25; Doc. No. 6-1 ¶ 4.) The government initiated removal proceedings against Chavez under 8 U.S.C. § 1229a. (Doc. No. 6-1 ¶ 7.) Via a February 11, 2025 Notice to Appear, the government charged Chavez as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") for being "an alien present in the United States who has not been admitted or paroled" and for "enter[ing] the United States illegally and without being inspected[.]" (Doc. No. 6-1, at 4–7.) Chavez is currently detained in the Northeast Ohio Correctional Center. (Doc No. 1 ¶ 1.)

Chavez was initially denied bond, and his various requests for reconsideration and appeals were similarly denied. (Doc. Nos. 1-2, 1-4, 1-7–1-9.) In denying bond, the immigration court noted

---

[2] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

that Chavez was "not subject to mandatory detention" and that it would "consider whether [Chavez] is deserving of bond under INA section 236(a) [codified at 8 U.S.C. § 1226(a)]." (Doc. No. 1-2, at 2.)

While Chavez continued to challenge the denial of bond, the Board of Immigration Appeals ("BIA") issued an interim decision in the *Matter of Yajure Hurtado*, determining that immigrants present in the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Doc. No. 1 ¶¶ 3, 8; *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).) Based on the *Matter of Yajure Hurtado*, the BIA dismissed Chavez's appeal of his bond determination for lack of jurisdiction. (Doc. No. 1 ¶¶ 3–5, 8; Doc. No. 6-1, at 8–11.)

Chavez filed the present petition on September 29, 2025, asserting that dismissal of his bond appeal was a violation of his rights under the Due Process Clause of the Fifth Amendment. (Doc. No. 1 ¶¶ 43–49.) Specifically, Chavez argues that his detention is governed by 8 U.S.C. § 1226(a)—which provides for discretionary bond—and not by 8 U.S.C. § 1225(b)'s mandatory detention provisions. (*Id.* ¶¶ 50–52.) Magistrate Judge Sheperd issued the R&R, concluding that Chavez's detention is governed by 8 U.S.C. § 1226(a) and not § 1225(b), and that dismissal of Chavez's bond appeal violated his due process rights. (Doc. No. 10.) The government timely objected. (Doc. No. 12.)

## II. LEGAL STANDARD

### A. Review of Reports and Recommendations

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is

dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party." (citations omitted)); Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections [to a magistrate judge's report and recommendation] does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citation omitted)). After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

   B.   **28 U.S.C. § 2241**

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). While the district courts' habeas powers are somewhat limited in the immigration context*, see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief" for challenges to removal orders), "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of

4

removal." *Jiang Lu v. U.S. ICE*, 22 F. Supp. 3d 839, 841 (N.D. Ohio 2014) (citing *Demore v. Kim*, 538 U.S. 510, 517–18, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)).

**III. DISCUSSION**

The R&R recommends granting Chavez's petition. The R&R bases its conclusion on three findings: (1) that Chavez's detention is not governed by 8 U.S.C. § 1225(b)(1)'s mandatory detention provision, (2) that Chavez's detention is governed by 8 U.S.C. § 1226(a)—which provides for discretionary bond, and (3) that the government violated Chavez's due process rights when it applied § 1225(b)'s mandatory detention provision to Chavez's detention. (*See generally* Doc. No. 10.) The government objects on the grounds that 8 U.S.C. § 1225(b)(2)'s mandatory detention provision applies to Chavez. (*See generally* Doc. No. 12.)

**A.    Relevant Detention Statutes**

Section 1225(b) governs the detention of "aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings v. Rodriguez*, 583 U.S. 281, 297, 138 S. Ct. 830, 842, 200 L. Ed. 2d 122 (2018). Section 1225(b) has two relevant subsections. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation[,]" *id.* at 287 (citation omitted), who have not been present in the United States for two continuous years. 8 U.S.C. § 1225(b)(1). If such immigrants apply for asylum or indicate a fear of persecution, § 1225(b)(1) mandates the immigrants' detention pending consideration of the asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii). "Section 1225(b)(2) is broader." *Jennings*, 583 U.S. at 287. It applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2). Section 1225(b)(2) mandates detention of such immigrants. *Id.*

5

While § 1225(b) provides specific rules for immigrants seeking entry into the United States, § 1226(a) provides the "default rule" for the detention of immigrants "already in the country[.]" *Jennings*, 583 U.S. at 288–89. Immigrants detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

### B. The Government's Objections

#### 1. 8 U.S.C. § 1225(b)(1)

The government levels no specific objections to the R&R's analysis of § 1225(b)(1) or its conclusion that § 1225(b)(1) does not apply to Chavez's detention. Indeed, the government appears to concede that § 1225(b)(1) does not apply. (Doc. No. 12, at 3 ("[Section] 1225(b)(1)(A)(iii)(II) is not relevant to [Chavez's] detention.").) In any event, the Court agrees with the R&R's conclusion that § 1225(b)(1), which only applies to immigrants who, *inter alia*, are arriving in the country or have not been present in the United States for at least two continuous years, could not apply to Chavez who has been in the United States continuously since 2001. (Doc. No. 10, at 13.) Accordingly, the Court ADOPTS the R&R's analysis of and conclusions regarding the applicability of § 1225(b)(1) to Chavez's detention.

#### 2. 8 U.S.C. §§ 1225(b)(2) & 1226(a)

The government's primary objection to the R&R is that § 1225(b)(2) mandates Chavez's detention without bond. According to the government, any immigrant "in the United States without admission or parole that [is] placed in removal proceedings under 8 U.S.C. § 1229a [is] . . . subject to detention under § 1225(b)(2)(A), and thus ineligible for a bond redetermination hearing[.]"

6

(Doc. No. 12, at 4.) Upon review of the text, structure, and history of the statute, the Court cannot agree with the government's interpretation of § 1225(b)(2).

When interpreting statutes, courts "must give effect to the clear meaning of the statutes as written." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation and quotation marks omitted). In so doing, the courts "assign each word of the statute its ordinary, contemporary, common meaning . . . , while keeping in mind that statutory language has meaning only in context." *Id.* (citations, quotation marks, and alterations omitted). Finally, "[i]t is a cardinal principal of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (citation and quotation marks omitted).

### a. The Relevant Text

The Court begins with the relevant text. Section 1226(a) states, in relevant part, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1225(b)(2) then states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]" 8 U.S.C. § 1225(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "Admission" in turn is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

7

Putting these statutes together, it would appear that § 1226(a) provides a general rule, while § 1225(b)(2) provides a carveout to that rule. Section 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer.

On this reading, § 1225(b)(2) does not apply to Chavez. While he is present in the United States without admission (Doc. No. 6-1 ¶¶ 5–6), and thus an "applicant for admission," he is not seeking to lawfully enter. Indeed, it would strain the words of the statute to say that one who has been in the United States since 2001 is seeking to enter it. *See, e.g., Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("those like [petitioner], who have been here for years upon years and never proceeded to obtained any form of citizenship . . . are not 'seeking' admission"); *Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"). Rather, as an immigrant arrested and detained while "already in the country[,]" *Jennings*, 583 U.S. at 289, Chavez falls more aptly within § 1226(a)'s default rule. *See, e.g., Lopez-Campos*, 2025 WL 2496379, at *8 ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").

The government argues, however, that Chavez's very presence in the United States as an unadmitted immigrant renders him subject to § 1225(b)(2). (Doc. No. 12, at 4–5.) It argues that,

because an immigrant may not legally remain in the United States without being admitted, any unadmitted immigrant remaining in the United States must be treated as "seeking admission" and subject to § 1225(b)(2). (Doc. No. 12, at 4 (citing 8 U.S.C. §§ 1101(a)(13), 1182(a)(6).) Section 1226(a), as the government argues, applies only to immigrants who were admitted into the United States and later became deportable. (Doc. No. 12, at 8.) The government's textual analysis is flawed.

The government's interpretation would render the term "seeking admission" entirely superfluous of "applicant for admission." Indeed, the government appears to acknowledge this. (Doc. No. 12, at 4 ("aliens present in the United States without admission or parole that are placed in removal proceedings . . . are applicants for admission . . . . Such aliens are also considered 'seeking admission[.]'").) This Court will not presume that Congress intended its words to be redundant or superfluous. *See TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). If Congress meant for all "applicants for admission" to be understood as "seeking admission" it would not have used both terms in the same sentence. *Sumba v. Crowley*, No. 1:25-cv-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)).

Relatedly, the government's interpretation fails to give effect to Congress's choice to use the active term "seeking" in describing those immigrants covered by § 1225(b)(2). "Seeking" "implies action[.]" *Lopez-Campos*, 2025 WL 2496379, at *6; *see also Sumba*, 2025 WL 3126512, at *4 ("a present participle stated in the progressive tense [] implies some ongoing, *affirmative*

9

action[.]" (emphasis in original)). "Seeking" requires something more than just passively being present in the United States.

Finally, the government's argument that § 1226(a) only applies to admitted immigrants conflicts with the statute itself. Section 1226(a) provides for discretionary bond to immigrants "arrested and detained pending" a removal determination—it makes no distinction between admitted and unadmitted immigrants. 8 U.S.C. § 1226(a). Further, § 1226(c)(1)(A, D, E) carves out certain inadmissible immigrants from § 1226(a)'s discretionary bond provision. 8 U.S.C. § 1226(c)(1)(A, D, E). If § 1226(a) only applied to admitted immigrants, it would be unnecessary for Congress to carve out certain inadmissible immigrants in § 1226(c)(1)(A, D, E). Again, this Court will not presume that Congress intended that its words would be superfluous. *TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). Overall, the text of the statute supports the Court's reading.

### b. The Relevant Context and Structure

The structure of the overall statutory scheme, as described in *Jennings,* 583 U.S. 281, further supports this Court's reading. In *Jennings*, the Supreme Court described § 1226(a) as the "default rule" that applies to immigrants "present in the country" including immigrants "who were inadmissible at the time of entry[.]" *Id.* at 288. Meanwhile, the Supreme Court described § 1225(b) in more specific terms. The Supreme Court noted that § 1225(b) operates within a process that "generally begins at the Nation's borders and ports of entry[.]" *Id.* at 287. The Supreme Court further noted that "§ 1225(b) applies primarily to aliens seeking entry into the United States[.]" *Id.* at 297. The Supreme Court's analysis in *Jennings* thus supports the Court's reading that § 1225(b)(2) applies to immigrants seeking to lawfully enter the United States, while § 1226(a)

10

provides a default rule applicable to immigrants detained in the United States, regardless of whether they were originally admitted.

The government, however, argues that the Supreme Court's analysis in *Jennings* supports its reading. (Doc. No. 12, at 4–5, 13.) First, the government points to the Supreme Court's statement that § 1225(b) "applies primarily to aliens seeking entry to the United States ('applicants for admission' in the language of the statute.)" (Doc. No. 12, at 4–5 (citing *Jennings*, 583 U.S. at 297).) Using this single, isolated sentence, the government argues that the Supreme Court understood "seeking admission" and "applicant for admission" to be one and the same and resultantly, understood § 1225(b)(2) to apply to all unadmitted immigrants in the United States. But when reading *Jennings* as a whole, it becomes clear that the Supreme Court did not construe § 1225(b) to apply so broadly. The Supreme Court understood § 1225 to operate "at the Nation's borders and ports of entry" and involve the "inspect[ion] [of immigrants] by immigration officers[.]" *Jennings*, 583 U.S. at 287. This language does not indicate broad application to all unadmitted immigrants in the United States. Rather, as other courts in the Sixth Circuit have found, this language indicates that § 1225(b)(2) applies to those arriving in the country. *See, e.g., Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *7 (E.D. Mich. Oct. 17, 2025).

Next, the government argues (Doc. No. 12, at 13) that the Supreme Court in *Jennings* characterized § 1226 as applying only to admitted immigrants present in the United States. This is incorrect. As discussed above, *Jennings* describes § 1226 as governing immigrants "present in the country" including immigrants "who were inadmissible at the time of entry[.]" *Jennings*, 583 U.S. at 288. From this language, the Supreme Court clearly contemplated § 1226(a)'s application to

11

unadmitted immigrants present in the United States. In light of the foregoing, the structure of the relevant statutes, as described by the Supreme Court in *Jennings*, supports the Court's reading.

### c. The Relevant History

The history of § 1226(a) further supports the Court's reading. Like other courts within the Sixth Circuit, *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025); *Contreras-Lomeli v. Raycraft*, 2:25-cv-12826, 2025 WL 2976739, at *7 (E.D. Mich. Oct. 21, 2025), this Court finds persuasive the historical analysis contained in *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025):

> Before [the Illegal Immigration Reform and Immigration Responsibility Act of 1994 ("IIRIRA")] passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. [] This predecessor statute, like Section 1226(a), included discretionary release on bond. [] Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." []

*Id.* at 1260 (internal citations omitted). Immigrants unlawfully in the United States were within the scope of § 1226(a)'s predecessor, and Congress declared § 1226(a) to have the same scope as its predecessor. It thus stands to reason that immigrants unlawfully in the United States fall within § 1226(a).

The government, however, argues that the history of the IIRIRA supports its reading. (Doc. No. 12, at 8.) As the government argues, the IIRIRA was intended "to eliminate 'an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." (*Id.* (quoting *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)).) Thus, as the argument goes, this Court should avoid any reading of the statute that would give immigrants who have already unlawfully entered the country any more procedural rights than those who attempted to enter at a port of entry.

12

The government's historical analysis is overbroad. The IIRIRA "did not fully disrupt the old system, including the system of detention and release[.]" *Salcedo Aceros v. Kaiser*, No. 25-cv-6924, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) (citing H.R. Rep. 104-469, 229 (1996)). While the IIRIRA was intended to address *some* inequities in the treatment of arriving immigrants and those already present, Congress also intended, as discussed above, to leave in place the discretionary bond framework available to most immigrants at the time. *Rodriguez*, 779 F. Supp. 3d at 1260. In other words, "Congress'[s] concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting *all* inadmissible noncitizens to mandatory detention[.]" *Salcedo Aceros*, 2025 WL 2637503, at *12 (citations omitted) (emphasis in original). The government's historical analysis thus fails.

The government's argument also fails to account for § 1226's recent history via the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). The Laken Riley Act added § 1226(c)(1)(E) which, in relevant part, mandates detention of immigrants who are (1) in the United States without admission or parole and (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act. Further, if, as the government argues, § 1225(b)(2) mandates detention of all unadmitted immigrants, then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act.[3] This Court "will not find that

---

[3] The government attempts to avoid this conclusion by arguing that redundancies in statutes are "common" and that "[r]edundancy in one portion of a statute is not license to rewrite or eviscerate another portion of the statute contrary to its text." (Doc. No. 12, at 9 (quoting *Barton v. Barr*, 590 U.S. 222, 239, 140 S. Ct. 1442, 206 L. Ed. 2d 682 (2020)).) That redundancy may, at times, be unavoidable, *see Barton*, 590 U.S. at 239 ("[S]ometimes the better overall reading of the statute contains some redundancy." (citations omitted)), does not change the "cardinal principle" that, where possible, courts should avoid rendering Congress's words "superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31. This is not a situation where the "better overall reading of the statute contains some redundancy." *Barton*, 590

13

Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Lopez-Campos*, 2025 WL 2496379, at *8 (citation omitted); *Barrera*, 2025 WL 2690565, at *4 (citation omitted).

### d.  Relevant Case Law

In the end, the Court finds the government's interpretation unpersuasive.[4] And the Court is not alone. The vast majority of courts to consider it have rejected the government's interpretation.[5] Indeed, almost every—if not every—district court within the Sixth Circuit to consider it has rejected the government's interpretation.[6] These courts found, as the Court finds here, that immigrants like Chavez who have spent years in the United States before being detained are subject to 8 U.S.C. § 1226(a)'s discretionary bond provision—not 8 U.S.C. § 1225(b)'s mandatory detention provision.

---

U.S. at 239. To the contrary, as discussed above, a plain reading of the relevant statutes, combined with consideration of the overall statutory scheme as described in Supreme Court precedent, results in a reading that avoids any redundancy. Far from "rewrite[ing] or eviscerate[ing]" the statute, this reading gives effect to each word written by Congress.

[4] The government also argues that "long-standing practice of the government can[not] somehow change, or even eviscerate, explicit statutory text[.] (Doc. No. 12, at 10.) Neither the R&R nor this Court rely on past practice in interpreting the relevant statutes. Accordingly, the Court does not address this argument

[5] *See, e.g., Ventura Martinez v. Trump*, No. 25-cv-1445, 2025 WL 3124847, at *2–3 (W.D. La. Oct. 22, 2025); *Kostak v. Trump*, No. 3:25-cv-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *5–8 (D. Mass. July 7, 2025); *Rodriguez*, 779 F. Supp. 3d at 1255–60; *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238, at *5–8 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. 25-cv-2157, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, 2025 WL 2349133, at *6–11 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *6–9 (S.D.N.Y. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052, 2025 WL 2370988, at *6–8 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *11–13 (D. Minn. Aug. 15, 2025); *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025); *Sumba*, 2025 WL 3126512, at *3–5.

[6] *See, e.g., Barrera*, 2025 WL 2690565, at *5 (collecting cases); *Pizarro Reyes*, 2025 WL 2609425, at *4–7; *Lopez-Campos*, 2025 WL 2496379, at *8; *Martinez-Elvir v. Olson*, No. 3:25-cv-589, 2025 WL 3006772, at *6–11 (W.D. Ky. Oct. 27, 2025); *Contreras-Lomeli*, 2025 WL 2976739, at *9; *Orellana v. Noem*, No. 4:25-cv-112, 2025 WL 3006763, at *5 (W.D. Ky. Oct. 27, 2025); *Hernandez Capote v. Noem*, No. 25-cv-13128, 2025 WL 3089756, at *5 (E.D. Mich. Nov. 5, 2025); *Jimenez Garcia v. Raybon*, No. 2:25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025); *Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *5–6 (W.D. Mich. Oct. 17, 2025).

In support of its argument, the government cites three non-binding, out-of-circuit decisions in which district courts adopted the government's interpretation. (Doc. No. 12, at 2 (citing *Chavez v. Noem*, No. 3:25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, No. 8:25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025)).) The Court finds these decisions unpersuasive for the same reasons it finds the government's arguments unpersuasive: (1) they fail to give effect to, and indeed render superfluous, the term "seeking admission" in § 1225(b)(2) and portions of § 1226(c); (2) they fail to read the Supreme Court's analysis in *Jennings* wholistically, and thus fail to properly consider the overall statutory scheme; and (3) they overgeneralize the relevant legislative history and thus fail to see that Congress intended to maintain the discretionary bond framework. Other courts within the Sixth Circuit have rejected these cases. *See Orellana*, 2025 WL 3006763, at *4 (rejecting *Chavez* and *Vargas Lopez*); *Mejia v. Woosley*, No. 4:25-cv-82, 2025 WL 2933852, at *3 n.2 (W.D. Ky. Oct. 15, 2025) (rejecting *Chavez* and *Vargas Lopez*); *Moralez-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at *6 n.3 (E.D. Mich. Nov. 7, 2025) (describing *Chavez* and *Vargas Lopez* as "outliers" and adopting majority interpretation).

* * *

In light of the text, structure, and history of the relevant statutes, the Court rejects the government's interpretations of 8 U.S.C. §§ 1225(b)(2) and 1226(a). Section 1225(b)(2) does not apply to all unadmitted immigrants present in the United States, and § 1226(a) is not limited to immigrants admitted into the United States. Rather, § 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer. Chavez,

15

who is currently detained pending a removal determination and who is not seeking to lawfully enter the United States, is governed by § 1226(a) and its discretionary bond framework.

As shown above, an analysis under § 1225(b)(2) does not disturb the R&R's conclusion that § 1226(a)—not § 1225(b)—governs Chavez's detention. Accordingly, the Court ADOPTS the R&R's analysis of and conclusions regarding the applicability of § 1226(a) and MODIFIES the R&R's analysis of § 1225(b) to include the preceding discussion. (*Supra* § III(B)(2).)

### 3. *Due Process*

The government levels no specific objections to the R&R's due process analysis. In any event, the Court agrees with the R&R's conclusion that, because Chavez's detention is governed by § 1226(a)'s discretionary bond framework, the government's misapplication of § 1225(b) to deny him appeal of his bond determination violates his due process rights. (Doc. No. 10, at 21.) This decision accords with those of other courts, finding that the application of § 1225(b)'s mandatory detention provisions to detainees governed by § 1226(a) violates the detainees' due process rights. *See, e.g., Casio-Mejia*, 2025 WL 2976737, at *9; *Garcia v. Raycraft*, No. 1:25-cv-1281, 2025 WL 3122800, at *7 (W.D. Mich. Nov. 7, 2025); *Godinez-Lopez v. Ladwig*, No. 2:25-cv-2962, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025). Accordingly, the Court ADOPTS the R&R's analysis of and conclusions regarding the violation of Chavez's right to due process.

## IV. CONCLUSION

For the reasons stated above, the government's objections are OVERRULED, and the R&R (Doc. No. 10) is ADOPTED, including as to its ultimate resolution of the petition, and MODIFIED to include the § 1225(b)(2) analysis contained above. (*See supra* § III(B)(2).) Chavez's petition (Doc. No. 1) is GRANTED, and the government is ordered to hold a hearing no more than five

business days from the day of this order to determine whether Chavez is entitled to discretionary bond pursuant to § 1226(a) and consistent with this Court's determination.

**IT IS SO ORDERED**.

Dated: November 14, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**